## FIDELITY-PHENIX FIRE INS. CO. v. HANDLEY.

(Circuit Court of Appeals, Fifth Circuit. January 19, 1924.)

No. 4083.

1. **Insurance ⬦⟿377(1), 386—Policy provision as to mode of waiver may be waived; insurer cannot be charged with waiver, unless it had knowledge of facts.**

While an insurer may waive by its acts or orally a requirement that an agreement of waiver must be in writing, it must have had knowledge of the facts before the doing of any act or the making of any agreement, in order that it shall have the effect of a waiver.

2. **Insurance ⬦⟿377(1)—Insurer held not to have waived condition of policy.**

A provision of a policy that, unless otherwise provided by agreement indorsed thereon, it should be void if the subject of insurance was a building on ground not owned by insured in fee simple, *held* not waived by insurer, where neither the company nor any officer or agent authorized to make such waiver had notice or knowledge until after the loss that the interest of insured in the property was a life estate and not title in fee simple.

3. **Insurance ⬦⟿376(1)—Statute held not to confer power of waiver on agent expressly withheld by contract.**

Rev. Gen. St. Fla. 1920, § 4256, *held* not to confer power on an agent of an insurance company to waive conditions in a policy, which was expressly withheld by the contract of the parties.

Appeal from the District Court of the United States for the Southern District of Florida; Henry D. Clayton, Judge.

Suit in equity by T. B. Handley against the Fidelity-Phenix Fire Insurance Company. Decree for complainant, and defendant appeals. Reversed.

A. W. Cockrell, Jr., Alston Cockrell, and Nathan Cockrell, all of Jacksonville, Fla., for appellant.

H. L. Anderson, of Jacksonville, Fla. (A. Z. Adkins, of Starke, Fla., and H. L. Anderson, of Jacksonville, Fla., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and ERVIN, District Judge.

ERVIN, District Judge. This was a bill filed to reform and enforce a policy of insurance issued by appellant to appellee on the "undivided two-thirds interest in" a certain building, so as to declare the interest to be one for life, instead of a fee, and to recover the amount of the insurance, when so enforced. The bill alleges in the fifth paragraph:

"That, at the time of the issuing of said policy by the defendant to your orator, it was so agreed, and was the intention of your orator and said defendant, that the defendant was to insure whatever interest your orator had in said buildings aforesaid named; that, although defendant, through its agents as aforesaid named, knew the condition of the title of your orator to the said property, that said clause allowing your orator to insure the undivided two-thirds interest in said building, although he did not own the fee simple title to it, was never inserted, nor any writing attached thereto allowing same."

The proof showed that, when the policy was applied for and written, the insured then understood and believed that he owned an undivided

two-thirds in fee of the property insured, and there was no understanding that anything else was to be insured. The insured building was erected by Handley, the insured, and one Andrews, the claimant of the other one-third interest, and apparently insured by them jointly until they fell out, shortly before the present policy was applied for, when Andrews took out a separate policy for his interest. Handley, on being informed that the insurance was about out, and that Andrews had taken out a separate policy, instructed one Jacobs, who was the local agent, to have a $5,000 policy written on his two-thirds interest. Jacobs, who had no authority to sign the policy, wrote a letter to J. R. Davis & Co., who were the agents having such power, containing the following:

"Mr. Andrews owns one-third interest and Mr. Handley the undivided two-thirds interest. * * * I saw Mr. Handley this morning, and told him how the matter stood, and he said to take $5,000 on his undivided two-thirds for three years."

The policy was issued on this letter. Jacobs was also employed by a bank largely owned by Handley, and acted in many respects as Handley's agent. The deeds under which Handley claimed were warranty deeds, and were kept in a tin box in the bank, and Jacobs had access to them. The policy contains the following provisions:

"$5,000 on the undivided two-thirds interest in the two-story brick metal-roof building," etc. "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the subject of insurance be a building on ground not owned by the insured in fee simple."

This clause is set up in the answer to the bill. Handley admits that his title is a life estate, instead of a fee simple one, but he claims that, after he discovered about January, 1921, that his interest was a life estate, instead of a fee simple one, he directed Jacobs, if it made any difference in the policy, to have it fixed, and Jacobs said he would do it. There is testimony tending to show that Handley spoke several times on the subject to Jacobs, but that Jacobs never in fact took up with J. R. Davis & Co., the agents, nor with the company itself, the matter of Handley's interest. In fact, the testimony shows they knew nothing of this matter until after the fire, which occurred December 4, 1921. Handley testified that the company denied liability all the time.

[1] The policy had attached to and as a part of it a note providing:

"No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto."

While it is held in Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689, and in Phœnix Ins. Co. v. Doster, 106 U. S. 34, 1 Sup. Ct. 18, 27 L. Ed. 65, that the company may waive by acts done, or orally, the requirement as to the agreement being in writing, still there must be brought home to the company the knowledge of the facts before it can be expected to do any act amounting to a waiver. Here no knowledge is traced to the company, or beyond Jacobs, the local agent, that Hand-

ley's title was a life estate, and not a fee. The rule on this subject is laid down in Phœnix Ins. Co. v. Doster, 106 U. S. 35, 1 Sup. Ct. 22, 27 L. Ed. 65, where it is said:

"Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture. The representations, declaration, or acts of an agent, contrary to the terms of the policy, of course, will not be sufficient, unless sanctioned by the company itself. Insurance Co. v. Mowry, 96 U. S. 544. But when the latter has, by its course of action, ratified such declarations, representations, or acts, the case is very different."

[2, 3] What has the company done to indicate its waiver? What has it induced Handley to do on the faith of, or in the belief that it has waived, the requirement that his title is a fee? True, had he known they would not waive it, he might have secured other insurance; but this delay on his part was not brought about by any act of the company. Neither knowledge nor notice was brought home to them, so they could do anything. It is said, however, that, as Jacobs was the agent of the company, the Florida statute (section 4256, Rev. Gen. Stat. of Florida) brings home to them the knowledge communicated to him. The same question involving the same statute was before this court in Maryland Casualty Co. v. Campbell, 255 Fed. 437, 166 C. C. A. 513, when, after quoting from Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 623, 36 Sup. Ct. 676, 60 L. Ed. 1202, this court said:

"That statute does not have the effect of conferring a power which the contract of the parties shows was explicitly withheld."

There was, in our opinion, a failure to show any mutual mistake in the provisions of the policy justifying a reformation. Further, we think the terms of the policy as written forbid a recovery.

The decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.