KANSAS CITY LIFE INSURANCE COMPANY v. RIDOUT.

Opinion delivered February 28, 1921.

1. INSURANCE—DELIVERY OF POLICY WITH KNOWLEDGE OF INSURED'S SICKNESS.—Though a life insurance policy provided that it should not take effect unless the applicant was in good health at the time of its delivery, the insurance company was bound by a policy delivered by an authorized agent when the agent had knowledge that the insured was then sick.

2. INSURANCE—AUTHORITY TO DELIVER POLICY.—An agent to whom a life policy was sent with instructions to deliver it to insured has the authority to bind the company by making such delivery, although he knew that insured was sick at the time of delivery.

3. INSURANCE—WAIVER OF RQUIREMENT OF GOOD HEALTH.—The provision of a life insurance company that it shall take effect only if delivered while the applicant is in good health is one which can be waived by the company.

Appeal from Prairie Circuit Court, Northern District; *Geo. W. Clark*, Judge; affirmed.

*Carmichael & Brooks,* for appellant.

1. The evidence shows that at the time of the receipt and acceptance of the application of Homer W. Ridout at the home office, at the time it was approved by the medical director, and at the time it was delivered, he was not in good health. The applicant was dangerously ill from a disease from which he never recovered, and the policy was null and void because not approved by the medical director during the good health of the applicant. It was not accepted by the company during the good health of applicant, nor was it delivered to applicant nor his beneficiary while applicant was in good health. Under the terms of the policy itself it was void. The note for the premium was not paid at the time of trial and was never paid.

2. The approval of the application and delivery of the policy while the applicant was in good health was a condition precedent to the making of the contract under the terms of the policy. 218 Fed. 597; 1 Joyce on Ins. (2 ed). § 97 (a); 111 Ark. 173; 36 S. E. Rep. 637; 96 N. C.

158; 1 S. E. 796; 33 *Id.* 536; 165 Pac. 997; 154 *Id.* 44. See, also, 35 O. C. C. 131; 106 Atl. Rep. 163; 211 S. W. 114; 181 Pac. 906; 203 S. W. 698; 134 Ark. 250.

The policy must be delivered while the applicant is in good health. 11 Ark. 173; 97 *Id.* 229; 129 *Id.* 137; 218 Fed. 599.

3. There was no waiver of the conditions, and the court erred in refusing instruction No. 2 asked by defendant.

4. The banker was not such a representative of the company that he was empowered to waive such conditions precedent. 154 Pac. 44; 85 Ark. 345. We have not overlooked the case in 129 Ark. 142, nor 111 *Id.* 435. See, also, 65 Mich. 527; 8 Am. St. 908; 45 So. Rep. 208-10. Under the evidence the banker had no authority to waive conditions in a policy.

5. There is no evidence to support the verdict.

*Brundidge & Neelly* and *Emmet Vaughan,* for appellee.

1. There is but one disputed question of fact, whether Hudson, the local agent, knew of the illness of insured when the policy was delivered. The testimony is conflicitng, and the verdict of the jury settles the matter.

2. The evidence shows a waiver and estoppel. The agent had authority to waive the condition and the company is estopped. 81 Ark. 205-7; 97 *Id.* 229; 111 *Id.* 236; 92 *Id.* 378; 97 *Id.* 564; 110 Tenn. 720; 27 Am. Rep. 761; 95 Tenn. 38; 93 U. S. 24.

The acceptance of the premiums with full knowledge of the condition of assured was a waiver. 127 Tenn. 521. Conditions precedent may be waived. See 111 Ark. 435; 164 S. W. 296; 136 Ga. 181; 138 *Id.* 778; 76 N. E. 91; 29 L. R. A. (N. S.) 433; 138 Am. St. 180; 108 Pac. 1048; 160 Iowa 184; 134 S. W. 892; 144 N. W. 843; 124 *Id.* 434; 144 *Id.* 843; 140 Am. St. 793; 124 N. W. 434; 64 S. W. 36; 55 *Id.* 364; 90 *Id.* 921; 48 *Id.* 219, and many others.

The case was submitted upon proper instructions, and the evidence fully sustains the verdict.

SMITH, J.   This is a suit to collect an insurance policy issued by the appellant company on the life of Homer W. Ridout, and this appeal is from a verdict and judgment in favor of the beneficiaries named in the policy.

The applicant was examined and the medical report made out by the company's examiner on August 2, 1919. The application was received on August 6, 1919, at the home office of the company in Kansas City, Missouri, but the application was held for certain reports and was not approved by the medical director until August 18, 1919, on which date the policy issued.

Upon issuing the policy the company sent it to its general agency in Oklahoma City, Oklahoma, which was its "exclusive representative in the Southern States." This agency transmitted the policy to J. F. Hudson, the company's local agent at Des Arc, the postoffice address of the insured.

The letter transmitting the policy contained the following directions concerning it:   "In order to advise policy holder at the earliest possible moment of the issuance of his policy, we suggest that you immediately send him a postcard notice reading as follows:   'At your earliest convenience please call at the bank.'

"When he calls, point out that the policy as issued is in every respect what he applied for.   Then ask him to sign the receipt—Form C103—attached to policy.   As this receipt is necessary for completion of our records, please return same to this office at your earliest convenience.   Your co-operation in promptly returning signed policy receipt will be greatly appreciated."

The policy arrived in Des Arc on August 27, and on August 28 a brother of the insured called at Hudson's office in the bank of which he was cashier for the policy, and asked to be permitted to sign his brother's name to the receipt therefor, stating to Hudson at the time that his brother, the insured, was at home sick and could not

call for the policy.   Hudson first agreed to this, but upon reconsideration decided it would be better to have the receipt signed by the insured himself.   This the insured did on the 28th, when the policy was delivered to him. The insured died August 30th.

Proof of death was duly made, but payment of the policy was refused because of a provision on the back thereof reading as follows:

"Section 1.   This policy shall not take effect unless the first premium herein has been paid and this policy delivered to the applicant within thirty days from the date hereof, or unless the applicant is in good health at the time of its delivery."

The insured paid the first premium by executing his note on the date of the application.   Hudson accepted this note as payment, and remitted to the company its part of the premium.   After the death of the insured the company offered to return this premium, but the tender thereof was refused.

It stands undisputed that the policy was issued, and was delivered, and the premium was paid; but Hudson testified that he was unaware of the insured's illness, and that he would not have delivered the policy had he been apprised of that fact.   This question of the agent's knowledge of the insured's illness presents the only question of fact in the case.   No contention is made that any false answers were found in the application for the insurance. The jury was told there could be no recovery if Hudson was not advised of the insured's illness; so that the jury's verdict eliminates that question of fact.   There is no allegation or proof of collusion between the agent of the company and the insured.

The decision of the case turns upon the effect to be given the act of the agent in delivering the policy after being advised of the insured's illness—in view of the provision of the policy quoted above.

Respective counsel have collected many cases dealing with the question stated; but we find it unnecessary to

review these authorities, as we have announced the principles which control here.

The policy sued on in the case of *Peebles* v. *Columbian Woodmen,* 111 Ark. 435, contained a provision substantially identical with the one set out above in regard to the health of the applicant at the time of the delivery of the policy. The policy there sued on contained provisions for disability benefits, and Peebles became disabled. It was insisted, on the motion for rehearing, as is indicated in the opinion on rehearing, that the agent who delivered the policy did not know the insured was seriously hurt. But we said the jury would have been justified in believing that, under the circumstances attending the delivery of the policy, the agent did know the insured was severely or seriously injured at the time of the delivery, although the agent testified that it was not thought that the insured was seriously hurt. We held that the company was bound by the act of its agent in delivering the policy. The doctrine of that case has since been reaffirmed in *Maloney* v. *Maryland Casualty Co.,* 113 Ark. 174; *Clinton* v. *Modern Woodmen,* 125 Ark. 115; *Grand Lodge A. O. U. W.* v. *Davidson,* 127 Ark. 133; *Missouri State Life Ins. Co.* v. *Burton,* 129 Ark. 137; *American Life & Accident Assn.* v. *Walton,* 133 Ark. 348; *Sovereign Camp W. O. W.* v. *Anderson,* 133 Ark. 411; *Hutchins* v. *Globe Life Ins. Co.,* 126 Ark. 360; *Sovereign Camp W. O. W.* v. *Newsom,* 142 Ark. 132.

It is finally insisted that Hudson was not such an agent as could bind the company by a delivery of the policy. But we do not agree with learned counsel in this contention. The delivery of the policy was the final act to the consummation of the contract. That duty was expressly committed to Hudson. He was admonished to discharge that duty expeditiously, and he was directed to secure and return signed policy receipt.

Hudson had acted for the company in taking the application, and in remitting the premium, and he was necessarily acting as the company's agent when he delivered

the policy. The provision quoted above was for the company's benefit, yet, notwithstanding that provision, he did the final and essential thing to consummate the contract of insurance, towit: he delivered the policy.

The case of *Independent Order of Forresters* v. *Cunningham*, 127 Tenn. 521, 156 S. W. 192, is found annotated in 5 A. L. R. 1569. The annotator's case-note reads as follows: "It has been generally held that provisions in an insurance contract of a mutual benefit association stipulating that liability for benefits on the part of the insurer shall not attach unless the certificate or policy is delivered to the applicant while in good health, or unless he is in good health at the date of the policy or date of issuance, or unless he is in good health at the time of payment of the first premium, are conditions precedent which may be waived by the insurer."

The rule stated is, of course, applicable to other insurance companies as well as to mutual benefit associations.

In support of the note quoted the author cites a large number of cases in addition to our own case of *Peebles* v. *Columbian Woodmen*, 111 Ark. 435.

Judgment affirmed.