## PERSON v. ÆTNA LIFE INS. CO.

Circuit Court of Appeals, Eighth Circuit.
April 15, 1929.

No. 8162.

James D. Head, of Texarkana, Ark., for appellants.

S. Lasker Ehrman, of Little Rock, Ark. (Grover T. Owens, of Little Rock, Ark., on the brief), for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. This is a bill in equity brought by appellee insurance company, against Levin K. Person and Corinne Person, husband and wife, to cancel a combination policy of life and indemnity insurance which appellee had issued to the husband, and in which the wife was designated as the death beneficiary.

The bill alleged that application for the

policy was made December 16, 1926. It further alleged:

"That said application, among other things, provided: 'It is agreed that no insurance hereon shall be effective until a policy is issued and the entire first premium has been paid during the good health of the proposed insured, and within sixty days from the date hereof.'

(6) "That thereafter a policy of insurance was issued by the plaintiff to the defendant, Levin K. Person, with the defendant, Corinne Person as death beneficiary therein; that said policy of insurance, among other things, provides: 'This policy shall not become effective until the first premium upon it is paid during the good health of the insured.'

(7) "That said policy of insurance was delivered to the defendant, Levin K. Person, on the 7th day of January, 1927, at Garland, Arkansas, and the first premium was by him paid at that time; that at the time of the delivery of said policy to the defendant, Levin K. Person, and the payment of the first premium by him, the said Levin K. Person was not in good health but was suffering from tuberculosis, and that he is now and has been since the time prior to the delivery of the policy to him, suffering from tuberculosis; that this fact was unknown to the plaintiff at the time of the delivery of the policy to him by the plaintiff, but it has since learned that he was not, in fact, in good health at that time."

It further alleged that by reason of these facts the policy never became a valid contract; that the company elected to rescind the contract of insurance; and that it tendered into court the amount of the premium paid with interest. It prayed that the policy be declared null and void and that it be surrendered and canceled.

Defendant moved to dismiss the bill on two grounds: (1) That since no fraud was alleged on the part of the insured in the procurement of the policy, the bill failed to state a cause of action for rescission; (2) that it was contrary to the public policy of the state of Arkansas to construe the policy clauses (above quoted) as a warranty, but that by the law of the state of Arkansas the clauses were mere recitals and required merely good faith on the part of the insured in actually believing that he was in good health at the time of the delivery of the policy.

The motion to dismiss was denied; defendants elected to stand upon their motion and refused to plead further; plaintiff deposited the amount of the premium in court,

and a decree was entered canceling the policy. The present appeal followed.

The main question involved in the case is what construction should be placed upon the above quoted clause in the policy. Is good health on the part of the insured at the time the first premium is paid a condition precedent to the taking effect of a valid contract of insurance, or does the contract of insurance take effect at the time of the payment of the first premium, unless at that time the insured knew or had reason to suspect that he was not in good health? The former construction was adopted by the court below; the latter is contended for by appellants.

By the great weight of authority, both in the federal and state courts, the former of these two constructions is placed upon such a clause.

In Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 14 S. Ct. 379, 381 (38 L. Ed. 231), the court, speaking generally of contracts of insurance, said: "Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy or policies, embodying the agreement of the parties. For a comparatively small consideration the insurer undertakes to guaranty the insured against loss or damage, upon the terms and conditions agreed upon, and upon no other, and when called upon to pay, in case of loss, the insurer, therefore, may justly insist upon the fulfillment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. The terms of the policy constitute the measure of the insurer's liability, and in order to recover, the assured must show himself within those terms; and if it appears that the contract has been terminated by the violation on the part of the assured, of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated, or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms, conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made."

Ætna Life Ins. Co. v. Johnson (C. C. A.) 13 F.(2d) 824, was an action upon a policy. The application, which was made a part of the policy, contained the following provision: "This policy shall not take effect until the first premium thereon shall have been actually paid, during the good health of the insured, a receipt for which payments shall be the delivery of the policy."

The insured died before making any premium payment. This court in its opinion said (page 825): "It is a rule generally adopted in the United States courts that, if a policy of life insurance provides that it is not to take effect until the first premium is paid, recovery cannot be had upon the policy, when it appears that the premium was unpaid at the date of the death of the insured, unless it appears that payment was waived by action of the insuring company."

MacKelvie v. Mutual Ben. Life Ins. Co. (C. C. A.) 287 F. 660, was a case similar in facts to the Johnson Case, supra. Action was upon the policy. The court said (page 663): "The law is settled in this court that, when a life insurance policy contains, as this one did, the provision that it 'will not take effect, unless the first premium or agreed installment thereof shall be actually paid during the lifetime of the insured,' the provision means exactly what it says and will be enforced."

New York Life Ins. Co. v. Wertheimer (D. C.) 272 F. 730, was a suit for cancellation of two policies. The court said (page 731):

"Plaintiff's right to relief rests on two grounds. One is that these insurance contracts contained a condition that they should not take effect unless the insured was in good health at the time the policies were delivered. The other is that the insured, in his written applications, which are made a part of the policies, made material statements and representations which were willfully false and fraudulently made, and were relied upon. The law relating to these grounds of relief is different and will therefore be considered separately.

"1. The applications do contain a clause which provides that the insurance applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by the insured during his lifetime and good health. The applications are made a part of the policies, and have the same effect as if written in the policies. See Hubbard v. Mutual Reserve Fund (1 C. C. A.) 100 F. 719, 40 C. C. A. 665; First National Bank v. Hartford Ins. Co., 95 U. S.

673, 675, 24 L. Ed. 563. The effect of these provisions is to make it a condition that the policies shall not take effect and become valid and binding unless the insured was in fact in good health at the time the policies were delivered. In this aspect, the insurer's obligation is not made to depend upon willful fraud or misrepresentation, but upon the fact as to whether or not the insured's health, was good or otherwise. The inquiry then becomes an inquiry as to that fact, and does not depend upon the insured's knowledge or belief. It was so held in Metropolitan Life Ins. Co. v. Howle, 62 Ohio St. 204, 56 N. E. 908, and Metropolitan Life Ins. Co. v. Howle, 68 Ohio St. 614, 68 N. E. 4. Such, also, is the general, if not the uniform, rule of decision. See Barker v. Metropolitan Life Ins. Co., 188 Mass. 542, 74 N. E. 945; note 17 L. R. A. (N. S.) 1145, 1148."

See, also, Scharlach v. Pacific Mut. Life Ins. Co. (C. C. A.) 16 F.(2d) 245.

Cooley's Briefs on Insurance (2d Ed.) vol. 1, p. 693, states the rule as follows: "Where an application for a life insurance policy, or the policy itself, or both the application and the policy, contain a provision to the effect that the policy shall not become operative until the first premium thereon has been actually paid to the company or to an authorized agent during the good health of the applicant, actual payment of the first premium while insured is in good health is a condition precedent to the liability of the insurer, unless waived." Many state court decisions are cited in support of the rule.

The foregoing holdings by the federal and state courts are not disputed by appellants, but they contend (1) that the contract of insurance was an Arkansas contract, and that therefore its construction was a matter of local law and not of general law; (2) that the construction adopted by the trial court is contrary to the public policy of the State of Arkansas; (3) that the Supreme Court of Arkansas by its decisions has adopted the construction contended for by appellant.

We take up first for consideration the last proposition.

Mutual Life Ins. Co. v. Parrish, 66 Ark. 612, 52 S. W. 438, was an action on a life insurance policy. The application, which was made a part of the policy, provided that the policy should not take effect until the first premium was paid in cash during the good health of the applicant. At the time of the application, July 24, 1896, the insured gave two notes for the first premium, one payable on delivery of the policy, the other on December 1st. About September 1st the policy

was sent to the local medical examiner for delivery upon payment. The insured was notified. October 6th the insured was taken ill; October 9th the premium was paid and the policy delivered; October 12th the insured died. On the trial the husband testified that he demanded the policy before his wife fell ill, but that delivery was refused unless he would pay the full amount of the delivery note, when he had been promised a discount. Plaintiff recovered a judgment. Motion for a new trial was made on the ground of surprise at the testimony of the husband. Motion was denied. The Supreme Court in reversing the case said (page 621 [52 S. W. 441]): "As the case must be remanded for a new trial, we state the court's views of the law applicable to the case." After setting out several propositions of law, the court said (page 622 [52 S. W. 441]):

"Unless provided otherwise in the contract, the acceptance of the proposal to insure for the premium offered is the completion of the negotiation, and, after the policy or certificate has been forwarded to the agent of the company for delivery, the contract cannot be rescinded without the consent of the party insured. It is, of course, different if any act remains to be done by the insured, or if it be stipulated that it shall not be binding until delivered by the agent, or shall not be operative till the first premium is paid. Northampton, etc., Ins. Co. v. Tuttle, 40 N. J. Law [476]; 1 Bacon, Ben. § 272, p. 538."

It is thus seen that the court clearly recognized the validity of the clause embodying the condition precedent to the taking effect of the policy.

In Peebles v. Columbian Woodmen, 111 Ark. 435, 164 S. W. 296, suit was brought on a beneficiary covenant issued to plaintiff Peebles by the Eminent Household of Columbian Woodmen. The by-laws of the association provided " * * * that the beneficiary covenant must have been delivered to the insured while in good health, and the latter must have signed, on delivery of said covenant, an acceptance of the same, and a statement of good health at the time, together with the acceptance of the conditions recited on the face of the covenant as well as the provisions of the constitution and by-laws governing the association."

Peebles testified that he signed the acceptance June 10, 1907, on the street while in good health, and was told by Phillips, representative of the association, that the covenant was at his office. June 24, 1907, Peebles was injured, but recovered and went back to work. In February, 1909, he was injured

again and permanently disabled. He applied for permanent injury benefits. The association refused to pay, on the ground that the covenant was not delivered to him while in good health. Two officers of the association testified that the acceptance was signed by Peebles in their presence while he was in bed after the first injury; that it was dated back and sent to the association and the covenant delivered to Peebles. After Peebles had received the second injury the officer in whose presence the acceptance had been signed, wrote the association telling the circumstances of the signing. The court directed a verdict for the defendant. The Supreme Court in reversing the case held that the officer in whose presence the acceptance was signed by Peebles, was, under the terms of the policy and the by-laws, the agent of the association to determine the condition of Peebles' health; that the covenant having been delivered, and the association, having received and kept the dues, was estopped from declaring that the condition precedent clause had never been fulfilled, and, therefore, that the policy was never in force. Here again the Supreme Court of Arkansas recognized the validity of the condition precedent clause, but held that the association was estopped to assert it.

Kansas City Life Ins. Co. v. Ridout, 147 Ark. 563, 228 S. W. 55, was similar to the Peebles Case. The court in its opinion said (page 567 [228 S. W. 56]): "The policy sued on in the case of Peebles v. Columbian Woodmen, 111 Ark. 435 [164 S. W. 296], contained a provision substantially identical with the one set out above in regard to the health of the applicant at the time of the delivery of the policy. The policy there sued on contained provisions for disability benefits, and Peebles became disabled. It was insisted, on the motion for rehearing, as is indicated in the opinion on rehearing, that the agent who delivered the policy did not know the insured was seriously hurt. But we said the jury would have been justified in believing that, under the circumstances attending the delivery of the policy, the agent did know the insured was severely or seriously injured at the time of the delivery, although the agent testified that it was not thought that the insured was seriously hurt. We held that the company was bound by the act of its agent in delivering the policy."

As to the Ridout Case itself the court said (page 566 [228 S. W. 55]): "This question of the agent's knowledge of the insured's illness presents the only question of fact in the case. No contention is made that any false answers were found in the application;

for the insurance. The jury was told there could be no recovery if Hudson was not advised of the insured's illness; so that the jury's verdict eliminates that question of fact." Here again the validity of the condition precedent clause was recognized, but was held waived.

In Jenkins v. International Life Ins. Co., 149 Ark. 257, 232 S. W. 3, no policy had been delivered, but plaintiff sought to recover upon an oral contract of insurance. The court in discussing the various kinds of contracts of insurance said (page 264 [232 S. W. 5]) : "The general doctrine is that contracts of insurance may be made by parol and, such being the case, of course delivery of the policy is not essential to the completion of the contract of insurance; and where the minds of the insured and the insurer for a valuable consideration have met upon all the terms of the contract, the contract is complete and enforceable, even though it was intended by the parties to be evidenced by a policy, but which because of some fortuity was not delivered before the death of the insured. * * * But of course the parties may agree, as a condition precedent to a complete and enforceable contract of insurance, not only that there shall be a delivery of the policy, but also a delivery while the insured is in good health."

Again, a clear recognition of the validity of the condition precedent clause.

In Inter-Southern Life Ins. Co. v. Ransom, 149 Ark. 517, 232 S. W. 754, action was brought on a policy of life insurance by the beneficiary. The application contained a condition precedent clause similar to those considered in the foregoing cases. On the trial both sides moved for a directed verdict. The court directed a verdict for plaintiff.

In affirming the judgment the Supreme Court said (page 526 [232 S. W. 757]) : "The doctrine of our cases is that where, by the provision of an insurance contract, certain conditions must exist, and certain things be done for the benefit of the insurer before the policy can be delivered and the insurance contract thus consummated, the agent to whom is committed the duty of delivering the policy and thus completing the contract must see that the requirements of the policy in these particulars are complied with before the policy is delivered; that a delivery of the policy by such an agent in the absence of collusion with the insured to defraud the company, and with knowledge of the facts showing that the conditions did not exist and the things had not been done incident to delivery, as required by the policy, will constitute a waiver of those conditions and requirements."

Here again the validity of such condition precedent clause was recognized, but it was held that it could be waived by an agent having knowledge of the facts.

Lincoln Reserve Life Ins. Co. v. Smith, 134 Ark. 245, 203 S. W. 698, was an action by the assignee of a policy of insurance against the insurance company. Application for the policy was made September 25, 1916. The policy was issued and delivered October 14, 1916, and assigned October 26, 1916. The insured died December 21, 1916. The company refused to pay. A trial resulted in a verdict against the company for the full amount of the policy with attorney's fees and statutory damages. The assignments of error are not set forth, the court in its opinion saying (page 699 [134 Ark. 248]) : "The assignments of error are very numerous, and it is believed that a general statement of the grounds on which liability of the company rests will dispose of many of the defenses without discussing the assignments of error in detail."

The court then discussed the question whether certain statements made in the application were warranties or representations, and held them to be mere representations. The court in its opinion further said : "Testimony was adduced by appellant tending to show that at the time the application was made by Jones he was afflicted with serious bladder trouble, which finally caused his death, but there was other testimony in the case in conflict, which presented an issue as to the truthfulness or falsity of the statements in the application concerning the applicant's state of health. That question was submitted to the jury, and there was evidence sufficient to support the finding in plaintiff's favor. The death of the applicant occurred about two months after the delivery of the policy, but there was evidence of a substantial nature tending to show that the death resulted from malarial trouble, which arose after the issuance of the policy."

Further on in its opinion the court said (page 700 [134 Ark. 250]) :

"Another question in the case was whether or not the policy was delivered to Jones while in good health, so as to meet the requirement of the stipulation in the application, which reads as follows:

" 'That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and good

health, and that unless otherwise agreed in writing the policy shall then relate back to and take effect as of the date of this application.'

"The solution of this question turns also upon the good faith and apparent state of health of the insured at the time of the delivery and acceptance of the policy. The stipulation does not constitute a warranty of good health at the time of the delivery of the policy, but only amounts to a stipulation for a delivery while the insured is in apparent good health, and free from such diseases as would seriously affect the risk. That issue was also fully and completely submitted to the jury upon appropriate instructions."

So far as appears from the opinion, the stipulation in question was not contained in the policy, nor was the application made a part of the policy. The sole question considered was whether the stipulation in the application was a warranty. Apparently the question was not presented whether there was created a condition precedent to the coming into effect of a valid policy of insurance.

This Smith Case is the one principally relied upon by appellants in the case at bar. We think, however, that when it is read in connection with prior and subsequent decisions of the same court, it does not establish appellants' contention.

Missouri State Life Ins. Co. v. Witt, 161 Ark. 148, 256 S. W. 46, is also relied upon by appellants. That was an action by the beneficiary in a life insurance policy against the insurance company. The main point decided in the case was that the answers in the application were not warranties but mere representations, and that though false they would not avoid the policy unless willfully and knowingly made with intent to deceive. The question whether there existed a condition precedent to the taking effect of the insurance contract was not involved in the case.

American National Ins. Co. v. Hale, 172 Ark. 958, 291 S. W. 82, was an action by a beneficiary upon two life insurance policies. The insurance company defended upon the ground that the assured was not in sound health at the time the policies were issued. The testimony was conflicting as to the condition of health of the assured. The trial court instructed the jury that "if they found that the deceased was not in sound health and that the agents of the defendant had knowledge of such fact, which knowledge they had obtained in the scope of their employment, then the defense of unsound health would not be available, and their verdict

should be for the plaintiff; but, if they found that the insured was not in sound health, and the agents of the company, acting within the scope of their employment, had no knowledge of such fact, then the verdict should be in favor of the defendant." The insurance company asked the court to instruct "that, if the insured was not in sound health on the day the policies were issued, their verdict should be in favor of the defendant, even though the jury should find that the agents of the company knew that he was not in sound health when the policy was issued." The court refused the instruction. The Supreme Court in its opinion quoted with approval the following rule from a Tennessee case (page 962 [291 S. W. 83]): " 'Where an insurer, at the time of the issuance of a policy, has knowledge of existing facts which, if insisted upon, would invalidate the contract from its inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with such facts, and the insured is estopped thereafter from asserting the breach of such conditions.' " [Life & Cas. Ins. Co. v. King, 137 Tenn. 685, 195 S. W. 585.]

After reviewing the Arkansas cases the court further said (page 964 [291 S. W. 84]): "It follows from the doctrine of these cases that the court did not err in giving the instructions on its own motion and in overruling appellant's prayer for instruction. The issue as to whether or not the insured was in sound health at the date of the application and delivery of the policy was correctly submitted to the jury. The jury was also correctly instructed to the effect that, if they found that the insured was not in sound health at the time of the application and delivery of the policy, and the appellant had knowledge of that fact, the verdict should be in favor of the appellee."

It is apparent that the real questions in the case were whether there was knowledge by the company of the facts which if insisted upon would have invalidated the contract, and whether such knowledge constituted a waiver.

Modern Woodmen of America v. Whitaker, 173 Ark. 921, 293 S. W. 1045, was an action by a beneficiary upon a life insurance policy. The application stated that applicant warranted the truth of the answers contained therein. When the policy was delivered to the insured he signed the following certificate:

"I have read and hereby accept the above

benefit certificate and agree to all the conditions therein contained and referred to. I hereby warrant I am now in good health. I agree and understand that this certificate is not binding upon the society until signed by me, nor unless I am now in good health."

The company pleaded these warranties as a defense, claiming that insured was not in good health when the policy was delivered.

The evidence was conflicting. The trial court gave the following instruction requested by plaintiff:

"Instruction No. 2. Before the plaintiff can recover the burden is hers to show by a preponderance of the testimony that her son had a policy of $1,000; had paid the usual and required rate; had made no misrepresentations to procure the policy; and that he died during the life of the policy. If you so find, your verdict will be for the plaintiff."

Also the following instruction requested by defendant: "Defendants' requested instruction. In this case, gentlemen, there is but one issue for you to determine, and that is whether Thomas W. Whitaker was, on the 6th day of April, 1925, the date of the delivery of the certificate, in good health. The defendant pleads that on said date the applicant was suffering with influenza and an affection of the heart. Upon this issue the burden is upon the defendant. If you believe from a preponderance of the evidence that the applicant, Thomas W. Whitaker, was on said date, April 6, 1925, affected with influenza and leakage of the heart, or either of such diseases, then in that event you must find for the defendant; and it makes no difference whether deceased knew of such condition or not."

The jury returned a verdict for plaintiff. The Supreme Court in its opinion said (pages 932, 933 [293 S. W. 1048]): "There is no controversy about the good health of the applicant at the time the application was made. It is not contended that at that time he was not in good health. But it is contended that, on the 6th day of April, the day the policy was delivered, he signed a certificate, and that that certificate was a warranty that he was in good health. * * *

"It is contended that the statement in the above certificate, 'I hereby warrant I am now in good health,' constitutes a warranty, and therefore must be true. The testimony of the clerk who delivered the policy shows that Whitaker came to the bank, and the policy was delivered to him, and he signed it, and if there was anything to indicate that he was not in good health at the time, this witness did not mention the fact, and was not asked about it by either party. He was the clerk of the camp, whose duty it was to deliver the policy only in case the insured was in good health at the time. He delivered it to him on that day, evidently believing that he was in good health."

The court further said (pages 935, 936 [293 S. W. 1050]): "It will be remembered that the appellant's physician not only examined the applicant thoroughly, but stated that he had known him all his life, and he knew at the time he examined him whether or not he was in good health, and that he stated that at that time he was in good health. After that the policy was issued. It was delivered to the insured at the Bank of Harrison when the insured was apparently in good health. The statement of the insured was evidently not in the face of the policy, but he signed a statement to the effect that he was in good health at that time, and, while the statement itself contains the word 'warranty,' we think it was not a warranty further than that the insured warranted the truth of his answer. That is, that he believed it to be true. Being made at the time it was, under the circumstances, we think it was a representation and not a warranty, although the word 'warranty' was used."

Here also it is to be noted that the real question discussed by the court was whether the statements made by the insured were representations or warranties. The question whether there existed a condition precedent to the coming into effect of a contract of insurance was not involved.

The latest opinion of the Supreme Court of Arkansas, to which our attention has been called, touching the question of validity of a condition precedent clause in connection with the creation of a contract of insurance, is in the case of Pyramid Life Ins. Co. v. Belmont, 7 S.W.(2d) 32. Action was brought by the insurance company against Belmont on a promissory note which had been given by him to cover the first premium on a life insurance policy which he had agreed to take. One of the defenses was that the policy was never delivered. The application which was made part of the policy contained the following:

"B. That every declaration hereinabove contained is true. That there shall be no contract of insurance until a policy shall have been delivered to me and the first premium paid to said company, or its duly authorized agent, during my lifetime and good health."

Defendant Belmont testified that the policy was never delivered to him. Witnesses for the insurance company testified that when the policy came to the local agent for delivery, the note of Mr. Belmont had fallen due; that the policy was tendered to Mr. Belmont, but that he requested the agent to hold it until he got the money to pay the note. Judgment went for the defendant. Plaintiff appealed. The contention of the appellant was that "the contract of insurance was consummated upon the approval of the application by the company's medical director and became a complete and binding contract without the issuance or the delivery of the policy." The court, in answer to this contention, said (page 35):

"We do not agree with appellant that the contract of insurance was consummated upon the approval of the application by the company's medical director and became a complete and binding contract without the issuance and delivery of the policy because the application itself expressly stated that it should not be a contract of insurance until the policy was delivered. Therefore, if Belmont had died after his application had been approved by the medical director of the company, he could not have recovered the amount of the policy."

The court referred with approval to the case of Jenkins v. International Life Ins. Co., 149 Ark. 258, 232 S. W. 3, in which it was held that contracts of insurance may be made by parol without the delivery of a policy, but added (page 36):

"The court further said in the same case: 'But of course the parties may agree, as a condition precedent to a complete and enforceable contract of insurance, not only that there shall be a delivery of the policy, but also a delivery while the insured is in good health.' Numbers of authorities are cited in the above case, and there is no question about the rule in this state. But the record shows that the parties in the instant case agree that there should be no contract of insurance until the policy was delivered."

The judgment was affirmed.

From this review of the Arkansas decisions we think it is clear that in that state the validity of a condition precedent clause in an insurance policy such as we have discussed is fully recognized. In this respect the Arkansas decisions and the federal decisions are in accord.

It is possible that they are not in accord on the question of authority of particular agents of the insurance company to waive such a clause, and on the question of estoppel of the insurance company to question such waiver by the agent. These questions are not, however, involved in the case at bar. On the record it is admitted that the insured was not in good health when the policy was delivered, and that the insurer had no knowledge of that fact.

Since we find no conflict between the Arkansas decisions on the one hand and the federal decisions and the general law on the other, touching the validity of the condition precedent clauses in the insurance policy in suit, and since we find nothing in the statutory law of Arkansas which indicates that the recognition of the validity of such clause is contrary to the policy of the state of Arkansas, it becomes unnecessary to discuss the question which law should govern the construction of the policy in the instant case. Under the holdings of the Supreme Court of Arkansas as well as of the federal courts, the condition precedent clause was valid; it was not fulfilled, and no valid contract of insurance was created.

Judgment affirmed.